IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JULIE CATANA SAIZ,

      Plaintiff,

v.                                                                                           CV 18-0450 JHR

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

      Defendant.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on Julie Catana Saiz' Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 15], filed September 5, 2018. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to the undersigned Magistrate Judge serving as the presiding judge and entering final judgment. [Docs. 5, 7, 9]. Having studied the parties' submissions, the relevant law, and the relevant portions of the Administrative Record,[1] the Court will deny the Motion.

### I.    INTRODUCTION

This Court's institutional role in a social security appeal is specific and narrow. This Court must affirm the decision of the Acting Commissioner where it is shown to be supported by substantial evidence and is free from harmful legal error. Ms. Saiz argues that the Administrative Law Judge ("ALJ") who denied her claim failed to meet these deferential standards by improperly rejecting the functional limitations identified by one of her treating counselors, Juan Casaus, MA, LPCC. However, having reviewed Mr. Casaus' treatment notes and the ALJ's rationale for

---

[1] Document 12-1 comprises the sealed Administrative Record ("*AR*"). The Court cites the Record's internal pagination, rather than the CM/ECF document number and page.

rejecting his opinions in her decision, the Court is not convinced that the ALJ erred. To the contrary, the ALJ's reasons for rejecting Mr. Casaus' opinions are supported by substantial evidence. As such, the ALJ's decision must be affirmed.

## II. PROCEDURAL HISTORY

Ms. Saiz filed an application with the Social Security Administration for disability insurance benefits under Title II of the Social Security Act on July 18, 2014. *AR* at 147. She alleged a disability onset date of August 10, 2013, the day she stopped working, due to Depression, Anxiety and Hepatitis-C. *AR* at 60, 147. Ms. Saiz most recently worked as a title clerk at an automobile dealership. *AR* at 34. She testified that she can no longer work in this capacity because she started having panic attacks associated with stress. *AR* at 34-35.

The agency denied Ms. Saiz' claims initially and upon reconsideration, and she requested a *de novo* hearing before an ALJ. *AR* at 59-93. ALJ Ann Farris held an evidentiary hearing on December 9, 2016. *AR* at 29-58. The ALJ issued an unfavorable decision on March 29, 2017. *AR* at 12-28. Ms. Saiz submitted a Request for Review of the ALJ's Decision to the Appeals Council, which the Council denied on March 14, 2018. *AR* at 1-11. As such, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). This Court now has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

A claimant seeking disability benefits must establish that she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).

The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. § 404.1520(a)(4).[2]

At Step One of the sequential evaluation process, the ALJ found that Ms. Saiz has not engaged in substantial gainful activity since her alleged onset date. *AR* at 17. At Step Two, she determined that Ms. Saiz has the severe impairments of "anxiety, depression, substance abuse now in remission, and post-traumatic stress disorder (PTSD)[.]" *AR* at 15. At Step Three, the ALJ concluded that Ms. Saiz' impairments, individually and in combination, do not meet or medically equal the regulatory "listings." *AR* at 18-19. Ms. Saiz does not challenge these findings on appeal. [*See generally* Doc. 15].

When a claimant does not meet a listed impairment, the ALJ must determine her residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374184, at *1. In this case, the ALJ determined that Ms. Saiz retains the RFC to "perform a full range of work at all exertional levels but with the following nonexertional limitations: she is limited to simple, work-related decisions with few workplace changes. She should not be required to have interaction with the general public. She can have occasional, superficial interaction with co-workers." *AR* at 19.

---

[2] The Tenth Circuit summarized these steps in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016):

> At step one, the ALJ must determine whether a claimant presently is engaged in a substantially gainful activity. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). If not, the ALJ then decides whether the claimant has a medically severe impairment at step two. *Id.* If so, at step three, the ALJ determines whether the impairment is "equivalent to a condition 'listed in the appendix of the relevant disability regulation.'" *Id.* (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir. 2004)). Absent a match in the listings, the ALJ must decide at step four whether the claimant's impairment prevents him from performing his past relevant work. *Id.* Even if so, the ALJ must determine at step five whether the claimant has the [residual functional capacity ("RFC")] to "perform other work in the national economy." *Id.*

Employing this RFC at Steps Four and Five, and relying on the testimony of a Vocational Expert ("VE"), the ALJ determined that Ms. Saiz is unable to perform her past relevant work as an accounts payable clerk, food supervisor, bath attendant, customer service representative, or license clerk. *AR* at 22. However, the ALJ found that there are jobs that exist in significant numbers in the national economy that Ms. Saiz can perform, despite her limitations. *AR* at 23-24. Specifically, the ALJ determined that Ms. Saiz retains the capacity to work as an addresser, flat work tier, or prep cook. *AR* at 23-24. Accordingly, the ALJ determined that Ms. Saiz is not disabled as defined in the Social Security Act, and denied benefits. *AR* at 24.

### III. Legal Standards

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). "[I]n making this determination, [this Court] cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's." *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016). The Court must exercise "common sense" when determining whether the substantial evidence standard has been met; if the Court can follow the ALJ's reasoning, the decision must stand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The standard for a decision to be supported by substantial evidence is low. "'Substantial evidence' means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Howard v. Barnhart*, 379 F.3d 945, 947 (10th Cir. 2004). "It requires more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## IV. ANALYSIS

As the ALJ acknowledged, Ms. Saiz "sought consistent mental health counseling from May 2015 to September 2016." *AR* at 20 (citing Exhibit 7F). This counseling was provided by Juan Casaus, MA, LPCC. *See AR* at 338-524. At her August 28, 2015, appointment Ms. Saiz asked Mr. Casaus to "provide feedback" on her application for social security disability. *AR* at 369. Later, on March 7, 2016, Mr. Casaus filled out a "Medical Assessment of Ability to do Work-Related Activities (Mental)" form in support of Ms. Saiz' application. *See AR* at 333-336. In addition to noting several marked limitations in Ms. Saiz' mental abilities, Mr. Casaus opined that her diagnoses met Listings 12.04 (Affective Disorders) and 12.06 (Anxiety Disorders). *AR* at 335-336.

Unfortunately for Ms. Saiz, the ALJ effectively rejected Mr. Casaus' opinions.[3] The ALJ reasoned:

> The undersigned accords little weight to the medical assessment submitted by Juan Casaus, the claimant's counselor, who found the claimant to have significant limitations in her ability to understand and remember, sustain concentration and task persistence, interact with others, and adapt to changes in the workplace. Mr. Casaus also found the claimant to meet listings 12.04 and 12.06 (Ex. 6F). **First, Mr. Casaus is not a medical professional, is unfamiliar with the listings, and is an unacceptable medical source under our Regulations. This is also inconsistent with his own notes, which document progress in treatment and adherence to schedules and treatment plans. Furthermore, Mr. Casaus' opinions are inconsistent with the record as a whole; specifically, the normal mental status examinations in the record and the claimant's ability to perform a wide variety of activities of daily living.**

*AR* at 21 (emphasis added). Ms. Saiz argues that these reasons were not adequate under the regulations. [Doc. 15, p. 12]. The Court disagrees.

---

[3] The ALJ actually gave "little weight" to Mr. Casaus' opinions, but the Tenth Circuit has held that this is the same as "effectively rejecting" them. *See Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (equating "according little weight to" an opinion with "effectively rejecting" it); *Crowder v. Colvin*, 561 F. App'x 740, 742 (10th Cir. 2014) (citing *Chapo* for this proposition); *Ringgold v. Colvin*, 644 F. App'x 841, 844 (10th Cir. 2016) (same).

"It is the ALJ's duty to give consideration to all the medical opinions in the record. . . . He must also discuss the weight he assigns to such opinions." *Keyes-Zachary*, 695 F.3d at 1161 (cited regulations omitted). However, there is a distinction in the regulations between "acceptable" medical sources and those that are not. *See* SSR 06-03p, 2006 WL 2329939 at *2. "'Acceptable medical sources' include licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists." *Id.* Any other medical provider is referred to as an "other source." *Id.* The distinction is "necessary" because only "acceptable medical sources" can "establish the existence of a medically determinable impairment," give "medical opinions,"[4] and be considered "treating sources[5] . . . whose medical opinions may be entitled to controlling weight." *Id.* This is not to say that "other sources" are unimportant. To the contrary, as the Commissioner recognized when promulgating SSR 06-03p: "[w]ith the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not 'acceptable medical sources' . . . have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists." SSR 06-03p, 2006 WL 232939 at *3. As such, while information from "other sources" "cannot establish the existence of a medically determinable impairment . . . information from such 'other sources' may be based on special knowledge of the individual and may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-03p, 2006 WL 2329939 at *2; *see also Carpenter v. Astrue*, 537 F.3d 1264, 1267-68 (10th Cir. 2008) (explaining that while "other sources" cannot *diagnose* an impairment, their opinions are relevant to "the

---

[4] "Medical opinions are statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(1).

[5] "Treating source means your own acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1527(a)(2).

6

questions of *severity* and *functionality*") (citing *Frantz v. Astrue*, 509 F.3d 1299, 1301-02 (10th Cir. 2007)); *See also Mounts v. Astrue*, 479 F. App'x 860, 865 (10th Cir. 2012) (Other source "evidence can be considered to show the severity of a claimant's impairment and how it affects her ability to work.").

Medical evidence and opinions from "other sources" are weighed using the factors stated in 20 C.F.R. §§ 404.1527(c)(1) through (c)(6). *See* 20 C.F.R. § 404.1527(f)(1). These factors include: (1) the examining relationship; (2) the treatment relationship; (3) supportability of the opinion; (4) consistency of the medical opinion with the record as a whole; (5) specialization; and, (6) any "other factors" "which tend to support or contradict the medical opinion." 20 C.F.R. §§ 404.1527(c)(1)-(6); *see also Crowder v. Colvin*, 561 F. App'x 740, 744 (10th Cir. 2014). "[N]ot every factor for weighing opinion evidence will apply in every case because the evaluation of an opinion from a medical source who is not an acceptable medical source . . . depends on the particular facts in each case." 20 C.F.R. § 404.1527(f)(1); *see also* SSR 06-03p, 2006 WL 2329939 at *4. However, depending on the facts of the case, an opinion from a medical source that is not "acceptable" under the regulations may outweigh one that is. 20 C.F.R. § 404.1527(f)(1); SSR 06-03p, 2006 WL 2329939 at *5. "The adjudicator generally should explain the weight given to opinions from these sources or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." 20 C.F.R. § 404.1527(f)(2); SSR 06-03p, 2006 WL 2329939 at *6. Thus, "[i]n the case of a nonacceptable medical source like [Mr. Casaus], the ALJ's decision is sufficient if it permits us to 'follow the adjudicator's reasoning.'" *Paulsen v. Colvin*, 665 F. App'x 660, 666 (10th Cir. 2016) (quoting *Keyes-Zachary*, 695 F.3d at 1164, in turn quoting SSR 06-03p, 2006 WL 2329939 at *6).

7

To reiterate, the ALJ gave three reasons for rejecting Mr. Casaus' opinions as to Ms. Saiz' limitations: (1) he is not a medical professional, is unfamiliar with the listings, and is not an acceptable medical source; (2) his opinions were inconsistent with his own treatment notes which show progress in treatment and adherence to a schedule and treatment plans; and (3) his opinions were inconsistent with Ms. Saiz' normal mental status examinations and ability to perform a wide variety of daily activities. *AR* at 21-22. Each of these reasons is facially valid under the regulations. First, the ALJ was entitled to consider Mr. Casaus' specialty, or lack thereof. *See* 20 C.F.R. § 404.1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."). Second, the ALJ was required to consider how well Mr. Casaus' opinions were supported by his medical records. *See* 20 C.F.R. § 404.1527(c)(3) ("The more a medical source presents relevant evidence to support a medical opinion, particularly medical signs and laboratory findings, the more weight we will give that medical opinion. The better an explanation a source provides for a medical opinion, the more weight we will give that medical opinion."). Finally, the ALJ permissibly considered the consistency of Mr. Casaus' opinion with the record as a whole. *See* 20 C.F.R. § 404.1527(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight we will give to that medical opinion.").

Ms. Saiz disagrees, arguing, first, that Mr. Casaus' status as an "other source" was an insufficient reason to disregard his opinions. [*See* Doc. 15, p. 12]. The Court agrees in principle with Ms. Saiz insofar as Mr. Casaus' opinion was relevant to the severity of her impairments and her overall functionality. However, the regulations permissibly draw a distinction between "acceptable medical sources" and "other sources," and the ALJ's reliance on this distinction was not error. Moreover, Mr. Casaus' opinions differed from those of consultative examiner John

8

Owen, Ph.D., whose opinion the ALJ permissibly elevated over Mr. Casaus.' *See AR* at 21, 298-300; *Keyes-Zachary*, 695 F.3d at 1164–65 ("The fact that a medical opinion is from an acceptable medical source is a factor that may justify giving that opinion greater weight than an opinion from a medical source who is not an acceptable medical source because acceptable medical sources are the most qualified health care professionals.") (quoting SSR 06–03p, 2006 WL 2329939, at *5). As such, the Court will not reverse the ALJ for reasoning that Mr. Casaus was not a medical professional or acceptable medical source.

Next, Ms. Saiz argues that Mr. Casaus' treatment notes are actually consistent with his opined limitations, rendering the ALJ's second reason unsupported by substantial evidence. [*See* Doc. 15, p. 12]. Ms. Saiz posits that Mr. Casaus only truly evaluated her progress three times, and that the final evaluation revealed that "she still had made only mild to modest progress with respect to … her treatment goals." [*Id.* (citing *AR* at 485-489)]. The Court disagrees with such a narrow reading of Mr. Casaus' treatment notes, which generally demonstrate an improvement in Ms. Saiz' symptoms through the use of abdominal breathing techniques and walks. *See AR* at 338-524. For example, Mr. Casaus documented Ms. Saiz' "prognosis" at every appointment and, after approximately 17 sessions, he changed it from "fair" to "good," maintaining that designation for the remainder of her treatment *See AR* at 377-524. In fact, right around this time, Mr. Casaus noted that Ms. Saiz exhibited "a reduction in anxiety associated with exploring returning to work and presents with increased confidence and excitement." *AR* at 379. Additionally, while Ms. Saiz missed several appointments when she first began treatment, *see AR* at 346, 350, 352, 360, she attended every other appointment until July 29, 2016, when she stopped seeking treatment altogether (in other words, she attended regular appointments from July 28, 2015 through July 29, 2016, without absences). *See AR* at 362-500. In sum, the Court finds the ALJ's second reason –

that Mr. Casaus' treatment notes document progress and adherence to schedules and treatment plans – to be supported by substantial evidence. While there is evidence that supports Ms. Saiz' position, the Court is not in a position to reweigh the evidence when substantial evidence (more than a mere scintilla) supports the ALJ's decision. *See, e.g.*, *White v. Berryhill*, 704 F. App'x 774, 776 (10th Cir. 2017) (unpublished) ("Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (quoting *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007)).

This leaves the ALJ's final reason – that Mr. Casaus' opined limitations are "inconsistent with the record as a whole; specifically, the normal mental status examinations in the record and the claimant's ability to perform a wide variety of activities of daily living." *AR* at 21-22. Ms. Saiz' argument attacking this reason is two-fold. First, she argues that this reason was not sufficiently specific to withstand review. [*See* Doc. 15, p. 13]. The Court agrees that the ALJ could have been more precise in offering this reason, as she appears to have discussed both Ms. Saiz' mental status examinations and daily activities *earlier* in the decision, but not explicitly when discounting Mr. Casaus' opinions. *See Lewis v. Berryhill*, 680 F. App'x 646, 647 (10th Cir. 2017) (unpublished). That said, having reviewed Ms. Saiz' function reports, Mr. Casaus' records, Dr. Owen's opinion, and the ALJ's decision, the Court is not troubled by the substance of the ALJ's finding. As the ALJ noted, "during her psychological consultative examination on January 26, 2015, [Ms. Saiz] scored 27 out of 30 points on her mental status examination." *AR* at 21. Additionally, citing Ms. Saiz' function reports and hearing testimony, the ALJ recognized that Ms. Saiz

> has demonstrated the ability to perform a wide variety of daily activities in spite of any alleged functional limitations arising from her impairments. To illustrate, the claimant reports she cares for her cat, manages personal care, prepares meals, does laundry, drives, goes shopping, goes out alone, spends time with others on a daily basis, can count change, watches television, and can follow both written and spoken instructions.

*AR* at 21. Ms. Saiz complains that when her testimony and function reports are viewed more closely, she qualified her ability to do many of these activities. [*See* Doc. 15, pp. 13-14]. While this may be true, again, it was the ALJ's prerogative to weigh the evidence and resolve evidentiary conflicts. Here, the ALJ permissibly considered that Ms. Saiz' daily activities contradict the extreme limitations that Mr. Casaus opined to. *See Newbold v. Colvin*, 718 F.3d 1257, 1266 (10th Cir. 2013). The Court, having reviewed Ms. Saiz' function reports and hearing testimony, finds that substantial evidence supports the ALJ's determination. *See AR* at 39-42, 183-190, 201-208.

## V. CONCLUSION

Ms. Saiz has failed to demonstrate that the ALJ's decision to effectively reject Mr. Casuas' opinions was unsupported by substantial evidence, and the Court finds that the correct legal standards were applied. As such, the Court must affirm the ALJ's decision.

Wherefore,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 15] is **DENIED**.

_____
JERRY H. RITTER
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent